IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| Bennie Mitchell,<br><br>   Petitioner,<br><br> v.<br><br>Warden of Ridgeland Correctional Institution,<br><br>   Respondent. | C/A No. 9:21-2121-CMC<br><br><br><br>**ORDER** |

**I. Introduction.**

This matter is before the court on Petitioner Bennie Mitchell's ("Mitchell") *pro se* petition for a writ of *habeas corpus* filed pursuant to 28 U.S.C. § 2254 ("Mitchell's § 2254 Petition"). ECF No. 1. Mitchel is currently an inmate in the South Carolina Department of Corrections serving a twenty-year sentence following his 2010 jury-trial convictions in South Carolina state court on one count of first-degree burglary and one count of possession of burglary tools. ECF No. 31-17.

**II. Procedural History.**

     **A. Trial, Direct Appeal, and Application for State Post-Conviction Relief.**

In January 2009, the Newberry County Grand Jury indicted Mitchell on one count of first-degree burglary, one count of possession of burglary tools, and one count of enhancement of larceny.[1] ECF Nos. 31-4 at 2; 31-17 at 2–3. In February 2010, Mitchell was also indicted on one count of petit larceny. ECF No. 31-4 at 2. At Mitchell's trial on April 19, 2010, the State, represented by Assistant Solicitor Austin McDaniel, Esquire ("Prosecutor McDaniel"), presented evidence

---

[1] The enhancement of larceny count was nolle prossed on April 21, 2010. ECF No. 31-4 at 2.

showing that when Newberry County resident Stephen Potts ("Potts") "return[ed] home from work at approximately 1:00 a.m. on October 28, 2008, he noticed someone or something had tampered with the window next to his back door." *State v. Mitchell*, 731 S.E.2d 889, 891–92 (S.C. Ct. App. 2012). Due to some prior break-ins at his home, Potts had mounted a motion-activated deer camera on top of his refrigerator. *Id.* at 891. When Potts checked the camera, he saw photographs of someone in his kitchen he did not recognize. *Id.* at 892. Lieutenant Roy McClurkin ("Lt. McClurkin") of the Newberry Police Department, who had known Mitchell from living in Newberry for over twenty years, subsequently identified Mitchell as the person in the photographs. *Id.* Potts testified the burglar had stolen one-hundred dollars in quarters, some clothing, and four to five cans of beer. *Id.* Mitchell, represented by Matthias Chaplin, Esquire ("Trial Counsel Chaplin"), presented a defense of mistaken identity. ECF No. 31-1 at 72–77, 213–14. The jury ultimately convicted Mitchell on the first-degree-burglary and possession-of-burglary-tools counts but acquitted him of the petit-larceny count. ECF No. 31-1 at 234–35. Mitchell received a twenty-year sentence on his first-degree-burglary conviction to run concurrently with a five-year sentence on his possession-of-burglary-tools conviction. ECF No. 31-17.

Mitchell exhausted his rights to file post-trial motions and a direct appeal in state court without success.[2] Thereafter, on March 14, 2014, Mitchell filed a *pro se* application for state post-conviction relief ("Mitchell's State PCR Application"), asserting claims of ineffective assistance of trial and appellate counsel.[3] ECF No. 31-2–11. Mitchell claimed Trial Counsel Chaplin provided ineffective

---

[2] On direct appeal, LaNelle DuRant, Esquire ("Appellate Counsel DuRant") represented Mitchell.

[3] The docket for Mitchell's State PCR Application can be accessed via the Newberry County Public Index at https://www.sccourts.org/caseSearch/ (last accessed July 13, 2022). The court takes judicial

2

assistance by: (1) failing to object to Potts' emotional girlfriend sitting at counsel table for the State and failing to make a motion the court order her to sit elsewhere, *id.* at 8; and (2) bolstering the identification testimony of Lt. McClurkin by starting his cross-examination of Lt. McClurkin stating he was a "good officer," *id.* at 10. *See also* State PCR Order of Dismissal at 3. Mitchell claimed Appellate Counsel DuRant provided ineffective assistance by failing to counter the State's argument the jury could have inferred he entered Potts' home with the intent to commit a crime but due to a multitude of scenarios, for example, noise from the deer camera or outside, he changed his mind and left before taking anything. ECF No. 31-11 at 10–12. *See also* State PCR Order of Dismissal at 3.

On July 30, 2014, the State filed a Return and requested an evidentiary hearing. ECF No. 31-12. Carson Henderson, Esquire, was appointed to represent Mitchell on his State PCR Application ("Original State PCR Counsel Henderson"). According to Mitchell, many years passed with Original State PCR Counsel Henderson stating he was ready to go forward, but the State had delayed the case. ECF No. 1-2 at 2. When Mitchell filed a civil action regarding the delay, the State blamed Original State PCR Counsel Henderson for the delay. *Id.*

In any event, on June 11, 2018, Mitchell filed a *pro se* motion to dismiss Original State PCR Counsel Henderson, have the state court appoint him new PCR counsel, and continue his State PCR Application until he and new counsel could "go over" his case in order to be "ready for a meaningful PCR hearing as this process is intend[ed]." ECF No. 31-17. On January 24, 2019, the state court granted Mitchell's motion and appointed Ashley A. McMahan as his new state PCR counsel ("New State PCR Counsel McMahan"). ECF No. 31-14. Then on August 12, 2019, in a consent order, the

---

notice of these state court records pursuant to Federal Rule of Evidence 201(b)(2). The court will refer to the state court's order of February 18, 2022, dismissing with prejudice Mitchell's Amended State PCR Application, as "State PCR Order of Dismissal."

3

state court authorized the South Carolina Commission on Indigent Defense to pay up to $3,500.00 for the services of a private investigator to continue to investigate Mitchell's allegations in his State PCR Application. ECF No. 31-15. A little over two years after such authorization, on October 6, 2021, Mitchell filed an amended State PCR Application ("Amended State PCR Application"), adding the following language: "Furthermore, the Applicant requests that he be permitted to amend his PCR application to conform to the evidence presented at the PCR hearing should any new or unaddressed issues arise during the course of the hearing that have not been specifically addressed in the Application. *See* Simpson v. Moore, 367 S.C. 587, 627 S.E.2d 701 (2006)." ECF No. 31-16.

Twenty days after Mitchell filed his Amended State PCR Application, on October 26, 2021, the state court held a virtual evidentiary hearing at which Mitchell and New State PCR Counsel McMahan were present. Mitchell proceeded on the two claims of ineffective assistance of trial counsel set forth in his Amended State PCR Application, plus an additional one, and did not proceed on his claim of ineffective assistance of appellate counsel. State PCR Order of Dismissal at 3. Mitchell's additional ineffective assistance of trial counsel claim alleged Trial Counsel Chaplin failed to inform him of a fifteen-year plea offer prior to trial. *Id.* at 3, 10–12.

Mitchell, Trial Counsel Chaplin, and Prosecutor McDaniel all testified at the evidentiary hearing. *Id.* at 1. The state court also had before it Mitchell's records from the South Carolina Department of Corrections, a copy of the original trial transcript, the records of the Newberry County Clerk of Court regarding Mitchell's subject convictions, Mitchell's records from his direct appeal, and the pleadings. *Id.*

On February 18, 2022, the state court issued its thirteen-page order addressing the merits of each claim in Mitchell's Amended State PCR Application, *i.e.*, the State PCR Order of Dismissal. This order sets forth the state court's findings of fact and conclusions of law based upon its evaluation

of the testimony at the evidentiary hearing, the other evidence submitted by the parties, and the legal arguments made by counsel.

The state court denied Mitchell's claim alleging Trial Counsel Chaplin provided him ineffective assistance by failing to object to Potts' emotional girlfriend sitting at counsel table for the prosecution and by failing to move she be ordered to sit elsewhere, reasoning as follows:

> Applicant has failed to establish how [Trial] Counsel [Chaplin] was ineffective in this matter. Both [Trial] Counsel [Chaplin] and [Prosecutor] McDaniel[] have credibly testified that Mr. Potts and his girlfriend were introduced during jury selection but were not allowed to sit at the State's table during the course of the trial. Further, [Trial] Counsel [Chaplin] and [Prosecutor] McDaniel[] testified that they cannot recall Mr. Potts' girlfriend being emotional during the course of the trial. [Trial] Counsel [Chaplin] testified he would have objected to Mr. Potts and his girlfriend's presence at the State's table during the trial, and if Mr. Potts' girlfriend was being overly emotional during the trial he would have brought it to the Court's attention. Though [Mitchell] asserts Mr. Potts and his girlfriend were sitting at the State's table during the trial, and that Mr. Potts' girlfriend was being emotional during the trial, [Mitchell] has failed to present any credible evidence to support this assertion.

State PCR Order of Dismissal at 7.

The state court denied Mitchell's claim alleging Trial Counsel Chaplin provided him ineffective assistance by starting his cross examination of Lt. McClurkin "by stating 'good evening, Mr. McClurkin, you're a good officer, aren't you?'" *Id.* at 8. In so denying, the state court reasoned as follows:

> [Mitchell] has failed to establish any evidence to support his assertion that [Trial] Counsel [Chaplin] was ineffective for improperly bolstering the testimony of Lt. McClurkin. In a PCR action, [Mitchell] bears the burden of proving the allegations in his application. . . . [Mitchell's] assertion that [Trial] Counsel [Chaplin] referred to Lt. McClurkin as a "good officer" is not supported through the record. Though [Mitchell] claims [Trial] Counsel [Chaplin] made these comments, and improperly bolstered Lt. McClurkin's testimony, the record does not show [Trial] Counsel [Chaplin] made any such comments. In the transcript of [Mitchell's] trial, [Trial] Counsel [Chaplin's] first comments to Lt. McClurkin on cross examination are "Officer McClurkin, do you have any training in the use of infrared illumination?" Tr. p. 167, 1. 1-3. [Trial] Counsel [Chaplin] proceeds to question Lt. McClurkin regarding his identification of [Mitchell], without referring to him as a good officer.

> Additionally, both [Trial] Counsel [Chaplin] and [Prosecutor] McDaniel credibly testified that the supposed bolstering comments do not appear in the record, and neither individual recalls [Trial] Counsel [Chaplin] making the alleged comments. Therefore, this Court finds [Mitchell] has failed to show how [Trial] Counsel [Chaplin] was ineffective, and this allegation is denied and dismissed.

State PCR Order of Dismissal at 9.

The state court denied Mitchell's ineffective assistance of trial counsel claim alleging Trial Counsel Chaplin failed to relay a plea offer of fifteen years prior to trial, reasoning as follows:

> [Mitchell] admitted he was aware of the fifteen-year plea offer prior to his plea, however [Mitchell] asserts that [Trial] Counsel [Chaplin] talked him out of accepting a plea offer by convincing [him] that they had a high chance of success at trial. [Trial] Counsel [Chaplin] testified he spoke with [Mitchell] at length regarding his case, and conveyed all plea offers to [Mitchell]. [Trial] Counsel [Chaplin] testified at no point did [Mitchell] say he wanted to plead guilty instead of proceeding to trial. [Trial] Counsel [Chaplin] testified [Mitchell's] focus was on making the State prove that [he] was the individual pictured inside Mr. Potts' house. Though [Mitchell] now claims he would have plead guilty instead of going to trial if not for [Trial Counsel Chaplin's] performance, this Court finds [Trial] Counsel [Chaplin] was not deficient in his representation of [Mitchell], and [Mitchell] cannot demonstrate how he was prejudiced by [Trial Counsel Chaplin'] performance.

State PCR Order of Dismissal at 11–12.[4]

Based on its findings and conclusions, the state court denied Mitchell's Amended State PCR Application and dismissed it with prejudice. State PCR Order of Dismissal at 13. On March 7, 2022, Mitchell noted an appeal from the State PCR Order of Dismissal, ECF No. 49 at 3–4, and on June 20, 2022, the transcripts of Mitchell's state PCR proceedings were delivered to the South Carolina Supreme Court.[5]

---

[4] Of note, Mitchell testified at the evidentiary hearing "he told [Trial] Counsel [Mitchell] that he was the one who was pictured inside Mr. Potts['] house." State PCR Order of Dismissal at 10.

[5] The docket for Mitchell's appeal of the State PCR Order of Dismissal, Appellate Case No. 2022-000258, can be found at https://ctrack.sccourts.org/public/caseView.do?csIID=75025 (last accessed July 13, 2022).

### B. Mitchell's § 2254 Petition.

Less than four months prior to the state court conducting its evidentiary hearing on Mitchell's Amended State PCR Application, but more than seven years after he originally filed his State PCR Application, acting *pro se*, Mitchell filed his § 2254 Petition. ECF No. 1. In it, he seeks permanent release from state custody and/or any other relief to which he may be entitled based on the following three grounds: (1) denial of his Due Process and Equal Protection rights based on what he characterizes as the State's inordinate delay in processing his State PCR Application, as amended; (2) ineffective assistance of trial counsel; and (3) ineffective assistance of appellate counsel. ECF No. 1 at 6, 8, 9. As to ineffective assistance of trial counsel, Mitchell reiterates his allegations pertaining to Potts' emotional girlfriend sitting at counsel table for the State and his allegation Trial Counsel Chaplin greeted Lt. McClurkin on cross examination by stating he was a "good officer." *Id.* at 10–23. Notably, Mitchell's § 2254 Petition does not reallege Trial Counsel Chaplin provided him ineffective assistance of trial counsel by failing to relay a plea offer of fifteen years prior to trial. As to his claim of ineffective assistance of appellate counsel, Mitchell reiterates his allegation Appellate Counsel DuRant provided him ineffective assistance by failing to counter the State's argument on appeal the jury could have inferred he entered Potts' home with the intent to commit a crime but due to a multitude of scenarios changed his mind and left before taking anything. *Id.* at 40–41.

On December 13, 2021, Respondent, the Warden of Ridgeland Correctional Institution, ("the Warden") filed a Return and a Motion to Dismiss based upon Mitchell's failure to exhaust his state court remedies as required by 28 U.S.C. § 2254(b)(1)(A). ECF Nos. 31, 32. On December 14, 2021, pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the court mailed Mitchell an Order advising him of the importance of a dispositive motion and the need to file an adequate response. ECF No. 33. On January 20, 2022, Mitchell filed a Response to the Warden's Motion to Dismiss.

7

ECF No. 37. Mitchell acknowledged he failed to exhaust his state court remedies and that "getting a hearing on [his] PCR is/was an important step." *Id.* at 2. "But," he argued, "this hearing alone did not remedy the harm done to me due to the discriminatory manner/inordinate delay by the State and or State's appointed PCR attorney representation, where my rights ha[ve] been violated." *Id.* at 3. "Moreover," he argued in pertinent part:

> Although I've had my PCR hearing, still there is no telling how long the PCR judge will take to make a ruling on my PCR. . . . And, if I have to appeal my PCR or the State appeal my PCR or I have to re-file in this court, I'll be delayed for several more years where I'll be maxed out Sept 17, 2025[,] thus I have shown sufficient cause to excuse the exhaustion requirements. . . . Wherefore, if this court deems that I have not shown sufficient cause[,] I ask this court to dismiss my petition w/out prejudice.

*Id.* at 13–14. The Warden did not file a Reply.

Also on January 20, 2022, Mitchell filed three motions: (1) a Motion to Amend or Correct, ECF No. 38; (2) a Motion to Stay, ECF No. 39; and (3) a Motion to Expand the Record, ECF No. 40. In Mitchell's Motion to Amend or Correct, he seeks leave to amend his § 2254 Petition to add a claim alleging Trial Counsel Chaplin provided him ineffective assistance of trial counsel by causing him to reject Prosecutor McDaniel's plea offer of fifteen years. ECF Nos. 38, 45. His two-paragraph Motion to Stay is confusing and unclear as to how long or why he seeks a stay. ECF No. 39. In his Motion to Expand the Record, Mitchell primarily seeks to include correspondence between him and New State PCR Counsel McMahan or her law clerks. ECF No. 40-1.

On February 3, 2022, the Warden filed a single Response opposing all three of Mitchell's motions filed January 20, 2022. ECF No. 42. The Warden opposed the Motion to Amend on grounds of untimeliness and failure to provide just terms to open the door to amendment under Federal Rule of Civil Procedure 15. *Id.* at 1–2. The Warden opposed the Motion to Stay on the ground Mitchell failed to articulate good cause for a stay pursuant to *Rhines v. Webber*, 544 U.S. 269 (2005). *Id.* at 2.

Finally, the Warden opposed the Motion to Expand the Record on the ground the motion is premature given the pending Motion to Dismiss for failure to exhaust state court remedies. *Id.* On February 25, 2022, Mitchell filed a single Reply in which he disputes his Motion to Amend/Correct is vague, nonetheless adds some details, disputes his Motion to Expand the Record is premature, and offers his Motion to Stay should be granted because he showed he suffered prejudice in his Response to the Warden's Motion to Dismiss.[6]  ECF No. 45.

### C. Magistrate Judge's Report and Recommendation.

In accordance with 28 U.S.C. § 636(b) and Local Civil Rule 73.02(B)(2), DSC, this matter was referred to United States Magistrate Judge Molly H. Cherry for a Report and Recommendation on the Warden's Return and Motion to Dismiss, ECF Nos. 31, 32, and Mitchell's Motions to Amend and Correct and to Stay, ECF Nos. 38, 39.  On May 13, 2022, the Magistrate Judge issued her Report and Recommendation ("the Report").  ECF No. 49.  After conducting a thorough legal analysis, the Report concludes Mitchell's § 2254 Petition should be dismissed without prejudice because he failed to exhaust his state court remedies as required by § 2254(b)(1)(A), and he cannot demonstrate his failure to exhaust should be excused.  ECF No. 49 at 5–10.  Ultimately, the Report recommends: (1) granting the Warden's Motion to Dismiss Mitchell's § 2254 Petition without prejudice, ECF No. 32; (2) denying Mitchell's Motion to Stay, ECF No. 39; and (3) finding Mitchell's Motion to Amend or Correct is moot, ECF No. 38.  ECF No. 49.  Acting in her own capacity, the Magistrate Judge granted Mitchell's Motion to Expand the Record.  *Id.* at 12.

---

[6] On March 16, 2022, Mitchell filed a Supplement to his Reply in which he states, *inter alia*, he never argued before the state PCR court he had a right to sit closest to the jury.  ECF No. 46 at 1–2.

The crux of the Report's legal analysis focuses on Mitchell's argument his failure to exhaust his state court remedies before filing his § 2254 Petition should be excused because of the State's inordinate delay in fully resolving his Amended State PCR Application. To address the merits of this argument, the Report applied by analogy the four factors the Supreme Court identified in *Barker v. Wingo*, 407 U.S. 514 (1972), as relevant in determining whether a defendant's Sixth Amendment right to a speedy trial has been violated. ECF No. 49 at 6. The four factors are: "Length of the delay; the reason for the delay; the defendant's assertion of his right; and prejudice to the defendant." *Barker*, 407 U.S. at 530. In applying the *Barker* factors, the Report followed the Fourth Circuit's application of the same factors in *Ward v. Freeman*, No. 94-6424, 1995 WL 48002 (4th Cir. Feb. 8, 1995) (*per curiam*) (unpublished table decision), to determine on a § 2254 petition whether the fifteen-year delay in processing the defendant's direct appeal in state court rose to the level of a Due Process violation. Recognizing "[s]tate remedies may be rendered ineffective by inordinate delay or inaction in state proceedings," *id.* at *1, the *Ward* court ultimately concluded the fifteen-year delay did rise to the level of a Due Process violation, and the remedy was to remand to the district court with instructions to consider the state prisoner's § 2254 petition on the merits, *id.* at *2.

As to the length of the delay, the first *Barker* factor, the Report recognizes at the time Mitchell filed his § 2254 Petition, his State PCR Application, as amended, had been pending for seven years, and the case hit the eight-year mark by the time the state court issued its order denying the application. ECF No. 49 at 7. The Report concludes while eight years of delay may be excessive for a PCR action, eight years is not so long as to be determinative of whether the delay has rendered state remedies ineffective. *Id.* As to the reason for the delay, the Report concludes that while some of the delay appeared to have resulted from the need for further investigation of Mitchell's state PCR claims, the majority of the time is attributable to the State. *Id.* at 8. Thus, the Report concludes, the second

10

*Barker* factor generally favors Mitchell. *Id.* The Report also concludes the third *Barker* factor (*i.e.*, the defendant's assertion of his right) generally favors Mitchell given indications in the record he diligently asserted his rights in state court. *Id.* In this regard, the Report points out Mitchell filed an action in state court when his State PCR Application was stalled and wrote multiple letters to New State PCR Counsel McMahan inquiring about the status of his case. *Id.*

Next, the Report concludes Mitchell has not suffered prejudice by the eight-year delay, and thus, the final *Barker* factor does not favor him. *Id.* at 9. In reaching this conclusion, the Report considered Mitchell's assertions he suffered prejudice from the delay because he was unable to prove his PCR claims, in part, because the court reporter destroyed the tape of his trial, despite having been asked by appellate counsel to retain the materials in his case. *Id.* at 8 (citing ECF No. 37 at 10–12). At the time Mitchell responded to the State's Motion to Dismiss his § 2254 Petition, the evidentiary hearing had been held, but no decision on his Amended State PCR Application had issued. As previously set forth, Mitchell speculated if he should need to appeal the forthcoming decision or refile his § 2254 Petition, he would be delayed several more years with his release date set for September 17, 2025, on the horizon. *Id.* (citing ECF No. 37 at 13). The Report also considered the Warden's arguments Mitchell suffered no prejudice from the delay because he had not shown he was denied the opportunity for a full and fair adjudication of his claims in state court, and he may raise a claim of inordinate delay before the Supreme Court of South Carolina in any PCR appeal. *Id.* at 9 (citing ECF No. 31).

In concluding Mitchell has not suffered prejudice by the eight-year delay, the Report primarily relies on the fact the State PCR Order of Dismissal, which issued after the parties finished briefing the prejudice issue, shows the state court was able to resolve Mitchell's PCR claims despite alleged omissions in the record, based, in part, on testimony by Trial Counsel Chaplin and Prosecutor

11

McDaniel. *Id.* As to Mitchell's concern his state PCR appeal will linger undecided for years, the Report reasons "there is no indication that will be the case," where the docket in Mitchell's state PCR appeal reflects although the matter is still in the very early stages, the PCR hearing transcript has been ordered, and Mitchell has corresponded regarding his allegations the trial transcript contains omissions and inaccuracies. *Id.* The Report also observes should Mitchell's speculation his state PCR appeal will not be resolved in a timely manner "come to pass, he has time to return to this court to seek habeas relief." *Id.*

Ultimately, the Report concludes, while the delay in Mitchell's "state PCR case has been lengthy, it has not risen to the level of inordinate delay that has violated [his] due process." *Id.* at 10. In reaching this conclusion, the Report acknowledges although three of the *Barker/Ward* factors favor Mitchell, the balance is not overwhelmingly in his favor. *Id.* at 9. Moreover, the Report goes on to state, in deciding whether Mitchell's failure to exhaust should be excused at this time, the following should be kept in mind: The exhaustion-of-state-remedies requirement is grounded in principles of comity, reflects the desire to protect the role of state courts in the enforcement of federal law, and "is based upon the pragmatic recognition that 'federal claims that have been fully exhausted in state courts will more often be accompanied by a complete factual record to aid the federal courts in their review.'" *Id.* (quoting *Castille v. Peoples*, 489 U.S. 346, 349 (1989)). The Report then elaborates as follows:

> Indeed, the principle of comity and pragmatic concerns about the incomplete state court record weigh against excusing [Mitchell's] failure to exhaust at this time. Of note in that regard, the PCR court has now ruled on [Mitchell's] PCR application. Thus, his application has moved beyond the stage where it was stalled. Other federal courts have indicated "[a]s a matter of general practice, . . . a district court which has excused exhaustion but has not yet embarked upon proceedings of substance [should] stay its hand once there is reliable evidence that the state action has been reactivated." *Walker v. Vaughn*, 53 F.3d 609, 615 (3d Cir. 1995). The fact that [Mitchell's]

>application has been ruled upon, and his PCR appeal is underway, further weighs against excusing his failure to exhaust at this time.

*Id.* at 10 (third and fourth alteration in original).

As for Mitchell's pending Motion to Amend or Correct, the Report provides it will be rendered moot if this court adopts the Report's recommendation to dismiss Mitchell's § 2254 Petition without prejudice for failure to exhaust his state court remedies. ECF No. 49 at 10. The Report recommends Mitchell's Motion to Stay should be denied as he can refile his § 2254 Petition once he has exhausted his state court remedies. *Id.* at 10–11. The Magistrate Judge granted Mitchell's Motion to Expand the Record on the ground "to the extent the evidence [Mitchell] has submitted is relevant to the question of whether his failure to exhaust should be [excused], it [is] appropriate to consider the documentation." *Id.* at 12.

The Magistrate Judge advised Mitchell of the procedures and requirements for filing objections to the Report and the serious consequences if he failed to do so. *Id.* at 13.

### D. Mitchell's Objections to the Report.

Mitchell filed timely objections on May 24, 2022, ECF No. 52, to which the Warden did not respond. Mitchell's objections to the Report are confusing. Nonetheless, boiled to the essentials, he objects to the Report's conclusion the eight-year delay in fully processing his Amended State PCR Application does not rise to the level of inordinate delay sufficient to violate his Due Process rights, and thus does not justify excusing his failure to exhaust his state court remedies prior to filing his § 2254 Petition. ECF No. 52. In this regard, Mitchell primarily points to the fact he was unable to prove his claims of ineffective assistance of trial counsel, *id.* at 2, because the tape of his trial no longer exists. *Id.* at 3. He also makes various complaints against the effectiveness of New PCR Counsel McMahan's prosecution of his State PCR Application and Amended State PCR Application.

13

For example, Mitchell complains New PCR Counsel McMahan did not use a private investigator to find an identification expert as she told him she would. *Id.* at 4–5. Mitchell claims her ineffectiveness conclusively renders his state court remedies ineffective, thus excusing his failure to exhaust.

### III. Analysis of Mitchell's Objections to the Report.

#### A. Standard of Review.

The Magistrate Judge makes only a recommendation to this court. The recommendation has no presumptive weight, and the responsibility to make a final determination remains with the court. *See Matthews v. Weber*, 423 U.S. 261 (1976). The court is charged with making a *de novo* determination of any portion of the Report of the Magistrate Judge to which a specific objection is made. The court may accept, reject, or modify, in whole or in part, the recommendation made by the Magistrate Judge or recommit the matter to the Magistrate Judge with instructions. *See* 28 U.S.C. § 636(b).

#### B. Applicable Law.

In addressing Mitchell's objections to the Report, the court first notes the Report correctly sets forth the applicable legal landscape. Because exhaustion of state court remedies by a state prisoner for the alleged violation of his federal rights "affords States 'an initial opportunity to pass upon and correct'" any such alleged violation, a state prisoner must exhaust his state court remedies before he can seek federal *habeas corpus* relief. *Shinn v. Ramirez*, 142 S. Ct. 1718, 1732 (2022) (quoting *Duckworth v. Serrano*, 454 U.S. 1, 3 (1981) (*per curiam*)). *See also* 28 U.S.C. 2254(b)(1)(A) (requiring state prisoners to "exhaus[t] the remedies available in the courts of the State" before seeking federal *habeas* relief). "Ordinarily, a state prisoner satisfies this exhaustion requirement by raising his federal claim before the state courts in accordance with state procedures." *Shinn*, 142 S. Ct. at 1732. However, failure of a state prisoner to exhaust his state court remedies on a claim alleging

14

he is in custody in violation of federal law should be excused where state court remedies are rendered ineffective by inordinate delay or inaction in state proceedings. *Ward*, No. 94-6424, 1995 WL 48002 at *1 ("State remedies may be rendered ineffective by inordinate delay or inaction in state proceedings."). *See also* 28 U.S.C. § 2254(b)(1)(B)(ii) (excusing state court prisoner's failure to exhaust state court remedies before seeking federal *habeas* relief when "circumstances exist that render such process ineffective to protect the rights of the applicant").

### C. Application of the Law to the Facts.

The court is satisfied the Report correctly identified the four factors to be considered in determining whether the eight-year delay in fully processing Mitchell's Amended State PCR Application has rendered ineffective Mitchell's right to state court remedies. Mitchell does not argue otherwise. Rather, the gravamen of his objection is the Report erroneously concludes the eight-year delay did not cause him to suffer prejudice in prosecuting his ineffective assistance of trial counsel claims on state *habeas*. Mitchell also lumps in complaints about the effectiveness of New PCR Counsel McMahan (*e.g.,* her failure to use a private investigator to find an identification expert), which are not relevant to his claim of inordinate delay.[7]

The court fully agrees with the Report's application of the *Barker*/*Ward* factors, and therefore adopts the Report's analysis and conclusion on the failure-to-exhaust issue as its own. The nub of the thing is the undisputed facts show while Mitchell's journey through the state *habeas* process had been slow up until October 2021, since then, beginning with a full evidentiary hearing on Mitchell's

---

[7] Here, the court notes in *Shinn*, the Supreme Court recently held, under 28 U.S.C. § 2254(e)(2), a federal *habeas* court may not conduct an evidentiary hearing or otherwise consider evidence beyond the state court record based on the ineffective assistance of state post-conviction counsel. 142 S. Ct. at 1734.

Amended State PCR Application on October 26, 2021, the pace has been brisk, with a decision on the merits issued just this past February, an appeal noted by Mitchell in March, and the transcript of the evidentiary hearing delivered to the state appellate court just last month. As for the lost tape of Mitchell's trial proceedings, the Report correctly recognizes the state *habeas* court had before it the trial transcript as well as the testimony of Mitchell, Trial Counsel Chaplin, and Prosecutor McDaniel to address the discrepancies alleged by Mitchell. In sum, based upon application of the four *Barker/Ward* factors to the circumstances of Mitchell's now normally proceeding state *habeas* case along with pragmatic concerns of comity, the court concludes Mitchell has failed to demonstrate the delay in fully processing his Amended State PCR Application has risen to the level of a Due Process violation, and therefore, his failure to exhaust his state court remedies will not be excused.

Finally, the court agrees with the Report's reasoning in recommending the court deny Mitchell's Motion to Stay, ECF No. 39, and finds his Motion to Amend moot, ECF No. 38.

### IV. Conclusion

For the reasons above, after *de novo* review of the record, the applicable law, the Report and Recommendation of the Magistrate Judge, and Mitchell's objections, the court agrees with the findings and conclusions of the Magistrate Judge. Accordingly, the court: (1) adopts the Report *in toto*; (2) grants the Warden's Motion to Dismiss Mitchell's § 2254 Petition without prejudice, ECF No. 32; (3) dismisses Mitchell's § 2254 Petition without prejudice, ECF No. 1; (4) denies Mitchell's Motion to Stay, ECF No. 39; and (4) dismisses Mitchell's Motion to Amend as moot, ECF No. 38.

### CERTIFICATE OF APPEALABILITY

The governing law provides that:

> (c)(2) A certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right.

>(c)(3) The certificate of appealability . . . shall indicate which specific issue or issues satisfy the showing required by paragraph (2).

28 U.S.C. § 2253(c). A prisoner satisfies this standard by demonstrating that reasonable jurists would find this court's assessment of his constitutional claims is debatable or wrong and that any dispositive procedural ruling by the district court is likewise debatable. *See Miller-El v. Cockrell,* 537 U.S. 322, 336 (2003); *Slack v. McDaniel,* 529 U.S. 473, 484 (2000); *Rose v. Lee*, 252 F.3d 676, 683 (4th Cir. 2001). In this case, the legal standard for the issuance of a certificate of appealability has not been met. Therefore, a certificate of appealability is **denied**.

**IT IS SO ORDERED**.

s/Cameron McGowan Currie
CAMERON MCGOWAN CURRIE
Senior United States District Judge

Columbia, South Carolina
July 13, 2022